The Supreme Court of the State of Colorado 
2 East 14th Avenue • Denver, Colorado 80203

2016 CO 18

 Supreme Court Case No. 14SC931 
Certiorari to the Colorado Court of Appeals 
Court of Appeals Case No. 13CA388

Petitioner: 
Bradley Klingsheim, 
v. 
 Respondents: 
Carl A. Cordell and Wanda M. Cordell.

Judgment Reversed 
en banc
April 4, 2016

Attorneys for Petitioner: 
The Baty Law Firm P.C. 
Michael W. Baty

Durango, Colorado

Attorneys for Respondents: 
Jon Lewis Kelly PC 
Jon L. Kelly

Dolores, Colorado

JUSTICE GABRIEL delivered the Opinion of the Court.

¶1       This case principally requires us to determine the scope of a county treasurer’s duty of diligent inquiry, pursuant to section 39-11-128(1), C.R.S. (2015), in attempting to notify a taxpayer that his or her land may be sold to satisfy a tax lien. The petitioner, Bradley Klingsheim, ultimately acquired tax liens and later requested and received deeds to properties that the respondents, Carl A. and Wanda M. Cordell, had owned but on which they had failed to pay taxes. The Cordells contend that the deeds were void because the La Plata County Treasurer’s Office (the “Treasurer”) had not fulfilled its statutory duty of diligent inquiry in attempting to notify the Cordells that it would be issuing a tax deed for the Cordells’ properties.

¶2       Construing section 39-11-128(1)(a), we conclude that a county treasurer has an initial duty to serve notice of a pending tax sale on every person in actual possession or occupancy of the property at issue, as well as on the person in whose name the property was taxed or specially assessed, if upon diligent inquiry, such persons can be found in the county or if their residences outside the county are known. In addition, we hold that a treasurer owes a duty of further diligent inquiry after an initial notice has been sent only when the facts known to the treasurer show that the taxpayer could not have received the notice of the pending tax sale.

¶3       Applying this standard here, we conclude that the Treasurer satisfied its duty of diligent inquiry. In addition, we conclude that the notice that the Treasurer provided in this case satisfied due process requirements. Accordingly, we reverse the judgment of the court of appeals and remand this case for further proceedings consistent with this opinion.
I. Facts and Procedural History

¶4       The Cordells were the record owners of a tract of land in La Plata County (Tract 1), and Mr. Cordell was also the record owner of an adjoining tract that had been deeded to him by his grandmother (Tract 2). After the Cordells failed to pay the taxes owed on these properties for three successive years, Brenda Heller purchased tax liens for each tract and later assigned these liens to Klingsheim. Thereafter, Klingsheim requested deeds for the properties from the Treasurer.

¶5       Pursuant to section 39-11-128(1)(b), the Treasurer published, for each property, notice of the tax sale and of Klingsheim’s application for the issuance of treasurer’s deeds. Additionally, pursuant to section 39-11-128(1)(a), the Treasurer sent, by certified mail, return receipt requested, copies of the notice for Tract 1 to the Cordells and a copy of the notice for Tract 2 to Mr. Cordell. The notices were addressed to the Cordells and to Mr. Cordell, respectively, at “705 N. Vine, Farmington, NM 87401,” which was the address listed for the Cordells on the La Plata County assessor’s tax roll.

¶6       After the notices were sent, the Treasurer received return receipts for both of the certified mailings. The receipts indicated that “Cleo Cordell,” who turned out to be Mr. Cordell’s mother, had signed for the notices at 703 North Vine.[1]
¶7       After receiving the receipts signed by Cleo Cordell, the Treasurer did not
re-check its records for other addresses, re-send the notices, or make any other efforts to notify the Cordells of the tax deeds or their redemption rights. After the statutory period had passed, the Treasurer issued the requested deeds to Klingsheim.

¶8       Subsequently, Mr. Cordell received a notice that no tax was owed on the properties at issue. Knowing that he had not paid the taxes on those properties, he “started looking” and found the above-described notices at his mother’s home. By that time, however, his time to redeem the properties had run.

¶9       The Cordells then filed the present action, seeking, as pertinent here, a declaratory judgment that the deeds were void and that the Cordells were the owners of Tract 1 and Mr. Cordell was the owner of Tract 2. After a bench trial, the trial court found that the Treasurer had failed to comply with the statutory requirements for issuing the deeds because, among other things, the Treasurer had not undertaken a diligent inquiry to determine the Cordells’ residences. Thus, the court declared the treasurer’s deeds void and set them aside.

¶10        Klingsheim appealed, contending that the trial court had misinterpreted pertinent case law to require an extended duty of inquiry when a return receipt is signed by someone other than the taxpayer and at what appeared to be a “next-door address.” Klingsheim asserted that the Treasurer “should not be burdened with another responsibility of inquiry after [meeting the] statutory obligations of correct mailing.”

¶11       In a split, published decision, a majority of a division of the court of appeals concluded that the Treasurer’s inaction after receiving the return receipts did not satisfy the duty of diligent inquiry required by section 39-11-128(1). Cordell v. Klingsheim, 2014 COA 133, ¶ 13, __ P.3d __. Specifically, the majority concluded that because the receipts informed the Treasurer that the notices were not actually delivered to either the intended recipients or their agents, the Treasurer was required to re-examine the county records for any alternative addresses. Id. Accordingly, the division affirmed the trial court’s judgment setting aside the treasurer’s deeds as void. Id. at ¶¶ 20–21.

¶12        Judge Jones dissented. In his view, the notices were received by Mr. Cordell’s agent for receiving mail, and thus, as a matter of law, he was served with the notices. Id. at ¶ 22 (Jones, J., dissenting). In addition, Judge Jones concluded that the Treasurer was not required to do anything more to give notice because any reasonable additional efforts would have been futile. Id. 

¶13        We subsequently granted Klingsheim’s petition for certiorari.[2]

II. Analysis

¶14        We first address the Treasurer’s duty of diligent inquiry under section 39-11-128(1). Statutory interpretation is a question of law that we review de novo. Shaw v. 17 W. Mill St., LLC, 2013 CO 37, ¶ 13, 307 P.3d 1046, 1049. We then address the Cordells’ argument that the notices that the Treasurer provided in this case violated the Cordells’ rights to due process. This argument also presents a question of law that we review de novo. See Quintano v. People, 105 P.3d 585, 592 (Colo. 2005) (reviewing de novo whether a criminal defendant was denied due process because it presented a question of law); cf. Dickinson v. Lincoln Bldg. Corp., 2015 COA 170M, ¶ 7, __ P.3d __ (“[W]hether a defaulting party’s due process right was violated by lack of notice presents a question of law that we review de novo.”).

A. Duty of Diligent Inquiry

¶15        Klingsheim argues that the division misinterpreted pertinent case law to conclude that an additional duty of diligent inquiry arises under sections 39-11-128(1)(a) and -128(1)(b) when a certified mail receipt is returned bearing a third party’s signature for an address different from the taxpayer’s. Although our analysis differs somewhat from Klingsheim’s, we agree that the Treasurer fulfilled its duty of diligent inquiry in this case.

¶16       Section 39-11-128 provides, in pertinent part:

(1) Before any purchaser, or assignee of such purchaser, of a tax lien on any land . . . sold for taxes or special assessments due either to the state or any county . . . at any sale of tax liens for delinquent taxes levied or assessments authorized by law is entitled to a deed for the land . . . so purchased, he shall make request upon the treasurer, who shall then comply with the following:

(a) The treasurer shall serve or cause to be served, by personal service or by either registered or certified mail, a notice of such purchase on every person in actual possession or occupancy of such land . . . , and also on the person in whose name the same was taxed or specially assessed if, upon diligent inquiry, such person can be found in the county or if his residence outside the county is known . . . .

(b) In all cases or instances where the valuation for assessment of the property is five hundred dollars or more, the treasurer shall publish such notice [at designated times] . . . , and he shall send by registered or certified mail a copy of such notice to each person not found to be served whose address is known or can be determined upon diligent inquiry.

(Emphasis added.)

¶17        This statute thus places a duty on a treasurer before a notice is sent. Specifically, the statute requires a treasurer “to make diligent inquiry to learn the address of the record owner and serve notice upon him at that address if it can be learned.” Bald  Eagle Mining & Ref. Co. v. Brunton, 437 P.2d 59, 61 (Colo. 1968).

¶18       In addition to this initial duty of diligent inquiry, divisions of our court of appeals have recognized that the treasurer may have a duty to make further diligent inquiry after the notice has been sent. For example, in Schmidt v. Langel, 874 P.2d 447, 451 (Colo. App. 1993), the division stated that “should the notice be returned as undeliverable, [the treasurer] is required to re-examine the county records for any alternative addresses.” Similarly, in Parkison v. Burley, 667 P.2d 780, 782 (Colo. App. 1983), the division concluded that after the notices were returned to the treasurer as undeliverable, “diligent inquiry required, at a minimum, a simple examination or reexamination of the assessor’s records.”
¶19        This court, however, has not previously addressed whether and under what circumstances a county treasurer has a duty to make a further diligent inquiry after a notice has been sent. This case squarely presents that issue for our review.

¶20        We begin by noting that the purpose of section 39-11-128(1) is to forbid the issuance of a treasurer’s deed absent reasonably diligent efforts to notify persons with an interest in the property, especially those with a right to redeem. See Turkey Creek, LLC v. Rosania, 953 P.2d 1306, 1313 (Colo. App. 1998).

¶21        Both applicable case law and section 39-11-128, however, recognize the practical limits on what a treasurer can reasonably do to ensure such notice. For example, in Siddoway v. Ainge, 538 P.2d 110, 113 (Colo. 1975), we observed that the treasurer “cannot be held to a standard requiring him to be familiar with or to search his correspondence files to ascertain the current addresses of delinquent property taxpayers. This is especially so where the treasurer was not put on notice that the address in his records was incorrect.” Likewise, in White Cap Mining Co. v.  Resurrection Mining Co., 174 P.2d 727, 733 (Colo. 1946), we concluded that to constitute diligent inquiry, the treasurer “was not obliged to go to the records in the office of the secretary of state to ascertain the address of [a corporate taxpayer] or its officers.” And section 39-11-128 nowhere requires proof of actual receipt of notice. Thus, we have suggested—and now make explicit—that a treasurer’s duty of diligent inquiry does not require the treasurer to ensure actual notice; rather, reasonable diligence to ensure notice is all that is required. See Columbus Invs. v. Lewis, 48 P.3d 1222, 1224 n.3 (Colo. 2002) (noting that although the taxpayers asserted that they had not received actual notice of the pending issuance of a tax deed, the treasurer had met the section 39-11-128 diligent inquiry requirements).

¶22        Recognizing the above-described balance between the need to give notice to a taxpayer and the practical limitations on what a treasurer can reasonably do to ensure proper notice, cases from this court and divisions of the court of appeals have required a treasurer to undertake a diligent inquiry after an initial notice has been sent only when the facts known to the treasurer show that the taxpayer could not have received notice of the pending tax sale.

¶23        For example, in Siler v. Investment Securities Co., 244 P.2d 877, 879 (Colo. 1952), notice was returned to the treasurer after being sent to an address that had not been occupied by the taxpayer corporation for many years. The notice was sent to that address notwithstanding the fact that for the then-current and prior two years, the property had appeared in the assessment roll and tax warrant at the taxpayer’s correct address, and the treasurer had mailed tax statements to the taxpayer at its correct address shortly before execution of the tax deed at issue. Id. Under those circumstances, this court held that the treasurer had not made a diligent inquiry to locate the taxpayer. Id. at 880. As the court observed, “If ‘diligent inquiry’ had been made, [the taxpayer] unquestionably could have been served with the notice required by statute.” Id. 

¶24       Similarly, in Parkison, 667 P.2d at 782, a notice of the defendant’s application for a treasurer’s deed was returned to the treasurer as undeliverable, but the treasurer made no further attempts to locate the taxpayers and then issued the treasurer’s deed. In these circumstances, a division of the court of appeals concluded that the treasurer had failed to conduct a diligent inquiry to find the taxpayers’ addresses. Id. 

¶25        And in Schmidt, 874 P.2d at 449, a notice of a tax sale and an application for a treasurer’s deed was returned to the treasurer marked, “Return to Sender, Forwarding Order Expired.” In this circumstance, the division observed that diligent inquiry “requires that if a notice has been returned, the county treasurer must re-examine the county records to check the address for accuracy and look for an alternative address.” Id. at 450. The division added, however, that if such a re-examination does not reveal a correct address, then “[t]he treasurer need not inquire into every possible source for the correct address of the record interest holder.” Id. 

¶26        In our view, these cases follow properly from section 39-11-128(1) because each case ensured that the treasurer exercised reasonable diligence before sending the notice, which is the only diligence requirement set forth in the statute. Thus, when a notice is returned as undelivered or undeliverable, a treasurer must re-examine his or her records to determine whether those records reveal the correct address.

¶27        In addition, the above-described cases strike the proper balance between a taxpayer’s right to notice, on the one hand, and the practical limits on a treasurer’s ability to ensure proper notice, on the other. When the circumstances make clear that the taxpayer could not have received the notice (e.g., when the notice is returned undelivered or undeliverable), the treasurer must undertake a further diligent inquiry to attempt to provide notice. See Siler, 244 P.2d at 879–80; Schmidt, 874 P.2d at 449–50; Parkison, 667 P.2d at 782. When, in contrast, the facts known to the treasurer do not establish that the taxpayer could not have received the notice, then no duty of further diligent inquiry arises.

¶28        Accordingly, we hold that a treasurer owes a duty of further diligent inquiry after an initial notice has been sent only when the facts known to the treasurer show that the taxpayer could not have received the notice of the pending tax sale.

¶29        The question thus becomes whether the facts known to the Treasurer in this case show that the Cordells could not have received the notices of the pending tax sales, such that the Treasurer owed a duty of further diligent inquiry. We conclude that the facts known to the Treasurer did not give rise to a further duty here.

¶30        As set forth above, the notices were sent to the current address listed for the Cordells in the tax rolls, namely, 705 North Vine, Farmington, New Mexico. This was the same address that had been listed for the five previous years and that the Treasurer had used without any problems. Indeed, the Treasurer was unaware of any previous mailings to that address, including annual tax notices, that had been returned undelivered or marked “undeliverable.” In addition, unlike the notices in Siler, Parkison, and Schmidt, the notices that were sent in this case were not returned as undelivered or undeliverable. To the contrary, they were accepted on the Cordells’ behalf by a person with the same last name and at an apparently adjacent address.

¶31        On these undisputed facts, we conclude that the facts known to the Treasurer did not establish that the Cordells could not have received the notices at issue. Indeed, although perhaps not pertinent to the question of the Treasurer’s duty of further diligent inquiry, which considers the Treasurer’s knowledge at the time it received the returned receipts, we think it worth noting that the evidence ultimately showed that the notices were received by precisely the person the Cordells intended to receive them. Moreover, Mr. Cordell found the notices exactly where he intended them to go, once he “started looking” for them.

¶32        The Georgia Court of Appeals addressed a similar issue, albeit in a different context, and reached a similar conclusion in Steelman v. Associates Discount Corp., 175 S.E.2d 62, 64 (Ga. Ct. App. 1970). There, the pertinent notice was sent by certified mail to Mrs. Steelman, but it was signed for by her sister-in-law, Mrs. Stuhman, who lived on the same rural road. Id. The pertinent question presented to the court was whether the notice to Mrs. Steelman was sufficient, even though she did not receive the notice. Id. 

¶33        The court concluded that “in using certified mail, return receipt requested, the plaintiff took reasonable steps as a matter of law, to give the other party notice, notwithstanding the testimony of [Mrs. Steelman] disclaiming receipt or knowledge of the notice.” Id. at 64–65. In reaching this conclusion, the court explained that “the real issue is not whether [Mrs. Steelman] received notice, but whether the plaintiff took reasonable steps to give notice to her.” Id. at 64. Thus, even though the notice appeared to be signed by someone other than the property owner and at a nearby address, the court determined that the notice was sufficient. Id. at 64–65; see also Wachovia Bank & Tr. Co. v. Murphy, 245 S.E.2d 101, 104 (N.C. Ct. App. 1978) (concluding that a secured party complied with the applicable notice statute even though the intended recipients’ mother and grandmother, who lived with the intended recipients, had signed the certified mail receipts on their behalf).

¶34        Here, as in Steelman, the party required to give notice was not obliged to ensure the actual receipt of that notice. Rather, it was required to make reasonably diligent efforts to deliver the notice. See § 39-11-128(1). Moreover, as in Steelman, the pertinent notice was sent to the property owner but was received and signed for by a relative at a nearby address. Like the court in Steelman, we conclude that these facts establish the requisite reasonable diligence on the part of the sender of the notice, even though the addressee did not personally sign for the notices and the person who accepted the notices did so at an address other than the address to which the notices were sent.

¶35        Our conclusion that the Treasurer exercised reasonable diligence finds further support in the fact that section 39-11-128(1) contemplates either personal service or service by registered or certified mail, and neither of these methods requires that the notice be placed personally in the recipient’s hands. Specifically, although the statute does not address the requirements for effective personal service, in other contexts, personal service is effective when accepted at a proper address by any person over the age of eighteen and who is a member of the family of the person to be served. See, e.g., C.R.C.P. 4(e) (delineating acceptable methods of personal service of process).

¶36        Similarly, we are unaware of any requirement that a document sent by certified mail, return receipt requested, must be signed for by the addressee himself or herself, and the Cordells cite no authority to support such a requirement.
¶37        In short, notwithstanding the Cordells’ apparent assumption to the contrary, the notice did not need to be placed personally in their hands. Accordingly, we do not agree with the Cordells’ suggestion that Cleo Cordell’s signature on the receipts for the notices should have alerted the Treasurer that the notices could not have been received by the Cordells, thereby triggering a duty of further inquiry.

¶38        For all of these reasons, we conclude that the facts known to the Treasurer did not show that the Cordells could not have received the notices at issue. We therefore conclude that the Treasurer had no duty of further inquiry after the notices were sent in this case.3

¶39        We are not persuaded otherwise by the Cordells’ reliance on this court’s decision in Bald Eagle, 437 P.2d at 60–62. In Bald Eagle, the treasurer mailed copies of the pertinent notices to an address listed in the tax rolls for Bald Eagle, a mining company. Id. at 60. An employee of an unrelated company, Jackpot Oil, whose offices were then at the address to which the notices were sent, received and erroneously signed for the notices as Bald Eagle’s agent. Id. The record did not show how the incorrect address came to be on the tax rolls. Id. Other records in the clerk and recorder’s and the assessor’s offices, however, contained Bald Eagle’s correct address, to which the treasurer had successfully mailed notices in the past. Id. at 60–61. In these circumstances, this court determined that the county treasurer had failed to satisfy the requirement of making a diligent inquiry before sending the notices at issue. Id. at 61. We did not address the duty of further diligent inquiry that is at issue in this case.

¶40        We likewise are unpersuaded by the Cordells’ assertion that the Treasurer should have sent notices to an address that had previously been listed in the Treasurer’s records. The alternative address on which the Cordells now rely, 5207 Hubbard Road, Farmington, New Mexico, had not been listed in the tax rolls as the current address for Tract 1 for ten years and had not been listed for Tract 2 for six years. The Cordells cite no applicable law, and we have seen none, to support their argument that when a certified letter is signed for by a family member, although at an apparently adjacent address, the treasurer nonetheless has a duty to search all available records to try to find a better address and to re-send the notice. Such a requirement comes close to requiring that a treasurer ensure actual receipt of a notice, which, as discussed above, is not required. Moreover, in our view, such a requirement would place an unreasonable burden on county treasurers.

¶41        Accordingly, we conclude that the Treasurer did not owe a duty of further diligent inquiry to the Cordells in this case.

B. Due Process

¶42        Klingsheim next contends that contrary to the Cordells’ claim, the notice in this case satisfied due process. We agree.

¶43        Due process does not require that a property owner receive actual notice before the government may take his or her property. Jones v. Flowers, 547 U.S. 220, 226 (2006). Rather, due process requires the government to provide notice that is reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action at issue and to afford them an opportunity to present their objections. Id. Thus, “if with due regard for the practicalities and peculiarities of the case these conditions are reasonably met[,] the constitutional requirements are satisfied.” Mullane v. Cent. Hanover Bank & Tr. Co., 339 U.S. 306, 314–15 (1950).

¶44        Applying these principles here, we conclude that due process was satisfied. We reach this conclusion for several reasons. First, the Treasurer sent the tax deed notices by certified mail, as required by section 39-11-128(1). Second, the notice was sent to the Cordells at the address listed in the tax rolls as the Cordells’ current address, which is an address that had been used for years, at Mr. Cordell’s express request, without apparent issues or non-delivery of mail. See Walter v. Harrison, 70 P.2d 335, 336 (Colo. 1937) (noting that it is the county assessor’s duty to prepare the tax rolls and that a treasurer is entitled to rely on their accuracy). Third, the notices were not returned as undelivered or undeliverable but rather were received and signed for by a person with the same last name as the intended recipients and who lived at an apparently adjacent address. And finally, the record shows that the notices were actually received by the person whom the Cordells anticipated would receive such notices on their behalf.

¶45        In these circumstances, we conclude that the notices were reasonably calculated to apprise the Cordells of the tax deeds and to give them an opportunity to present their objections. See Jones, 547 U.S. at 226.

¶46        Accordingly, we conclude that the notices at issue satisfied due process.
C. Klingsheim’s Remaining Contentions

¶47        In light of our foregoing disposition, we need not address Klingsheim’s remaining contentions before us.

III. Conclusion

¶48        For these reasons, we reverse the judgment of the court of appeals and remand this case for further proceedings consistent with this opinion.

[1] The record indicates that the property at issue was part of Mr. Cordell’s grandmother’s estate. When that property was sold, it was divided into three addresses—703, 705, and 707 North Vine. Mr. Cordell testified that for some period of time, his mother’s address was 703 North Vine and his brother’s address was 705 North Vine. Although Mr. Cordell’s main address was 5207 Hubbard Road, Farmington, New Mexico, he intentionally gave the Treasurer the 705 North Vine address as his mailing address because that address had a lockbox to which only Mr. Cordell’s mother and brother had keys. Mr. Cordell testified that he wanted his important mail to go to that lockbox because he had had problems receiving mail at the Hubbard Road address. Mr. Cordell testified that his mother or brother had been receiving mail sent to him at the 705 North Vine address since 1998 or 1999.
[2] We granted certiorari to review the following issue:

Whether the court of appeals’ decision in Cordell v. Klingsheim, 2014 COA 133, erroneously construed county treasurers’ “diligent inquiry” duties under section 39-11-128(1)(a) and (b), C.R.S. (2015).

[3] We need not and do not address the scope of the inquiry required when, unlike here, the facts known to the Treasurer show that the addressee could not have received the notices.