# No. 15,841.

## WRIGHT ET AL. *v.* YUST ET AL.
(195 P. [2d] 951)

Decided July 6, 1948.  Rehearing denied July 26, 1948.

450

Mr. Alden T. Hill, Mr. Lloyd E. Williams, for plaintiffs in error.

Mr. Horace N. Hawkins, Jr., for defendants in error.

*In Department.*

Mr. Justice Hilliard delivered the opinion of the court.

In an action begun May 14, 1945, by plaintiffs in error, plaintiffs below, against defendants in error, for adjudication of rights to real property in the City and County of Denver, described as lots one to fifteen, and lots sixteen to thirty, both inclusive, block thirty-seven, Malone and DuBois Subdivision, defendant Yust enjoyed favorable findings and judgment. Defendant in error Finnerty has not appeared, nor is she interested in the property involved.

It appears that in 1929, plaintiffs were the fee owners of the property involved, then, and hitherto, vacant and unoccupied; that the property was subjected to a general tax levy that year, in the payment of which plaintiffs defaulted; that in November, 1930, and because of such delinquency, the property, grouped as above described, was offered for sale, and in the absence of bidders it was stricken off to the City and County of Denver; that March 17, 1936, one Harry Bitman, who in the meantime had become assignee and owner of the tax sale certificates, received a county treasurer's deed for said property, which was recorded March 30, 1936; that May 10, 1940, Bitman conveyed the property to Gladys Yust, defendant in the action, who paid all taxes levied against said property, including general taxes, Moffat Tunnel and special improvement levies, or redeemed from all tax sales resulting from delinquencies in relation to such levies, so that, when plaintiffs instituted action here, May 14, 1945, or more than nine years after the Bitman

tax deed had been recorded, there were no delinquent taxes or assessments against said property or any part thereof. On the other hand, as further appears, commencing with the general tax levy for 1929, and including all subsequent levies, general, Moffat Tunnel, other specials, or whatever, up to the time of the filing of the complaint of this action—some sixteen years thereafter —plaintiffs had not paid any taxes levied on said property, nor had they redeemed from any of several tax sales thereof. Premised on the foregoing facts, not questioned as to verity, defendant Yust, pleading sections 144 and 146, chapter 40, 1935 Colorado Statutes, Annotated, alleged that "plaintiffs have no cause of action against this defendant, and no right, title or interest in said thirty lots and are barred from asserting any claim to said lots or any part thereof."

Before discussing the sections of the statutes thus pleaded, we pause to observe, that, while the treasurer's deed to Bitman—the basis of defendant's title— was issued without notice to plaintiffs of the application therefor, a statutory requirement, nevertheless, as we have held, the deed was "voidable, not void," and from the time it was recorded, March 30, 1936, as we have seen, it constituted "color of title." *Phillips v. City and County of Denver*, 115 Colo. 532, 175 P. (2d) 805. The foregoing in mind, section 144, pleaded as already stated, seems determinative of the controversy. It reads as follows: "Whenever a person having color of title, made in good faith, to vacant and unoccupied land, shall pay all taxes legally assessed thereon for seven successive years, he or she shall be deemed and adjudged to be the legal owner of said vacant and unoccupied land to the extent and according to the purport of his or her paper title. All persons holding under such taxpayer * * * before said seven years shall have expired, and who shall continue to pay the taxes as aforesaid, so as to complete the payment of the taxes for the aforesaid period of time shall be entitled to the benefit of this

section; * * * . For the purposes of this article a redemption from a sale for taxes by the party claiming under any of the limitations herein set forth shall be considered as the equivalent of a payment of taxes." But in behalf of plaintiffs it is urged that in taking title in the circumstances appearing, defendant did not proceed in "good faith," a requirement of the statute we have quoted. We think that defendant's payment of taxes in the manner and for the time shown, evidences good faith in the sense of the statute. *De Foresta v. Gast,* 20 Colo. 307, 38 Pac. 244; *Sullivan v. Collins,* 20 Colo. 528, 39 Pac. 334; *Crisman v. Johnson,* 23 Colo. 264, 47 Pac. 296. The deed here constitutes "color of title." "It gave right of possession." "Hence, until challenged [not done until this action was begun, May 14, 1945], the holder of that deed and his assignee stood in the shoes of the owner of the fee." *Phillips v. City and County of Denver, supra.* Cases cited to the point by plaintiffs we believe to be distinguishable. Besides, in finality, their reliance is upon the contention that the rule announced in the Phillips case, supra, after all, is not sound. We have re-examined that opinion and find it consistent with justice to adhere thereto. The statute involved, assuming the tax deed constitutes color of title, as here, is intended as a protection to the tax-title holder. *De Foresta v. Gast, supra.*

Considering that section 146, chapter 40, '35 C.S.A., also pleaded by defendant Yust, more particularly has to do with situations where the tax-title holder in possession is sued by the original fee holder, and regardless of the language in *Phillips v. City and County of Denver, supra,* which is to the effect that the tax-title holder stands "in the shoes of the owner of the fee," as well may be argued, such holder is in constructive possession; hence, we think determination thereof here is unnecessary.

■ Plaintiffs claim to have made tenders, first to Bitman when he claimed under the tax deed, and sub-

sequently to defendant Yust, Bitman's grantee. Yust testified she never had heard of the tender to Bitman; assuming the adequacy thereof, and there being no evidence contra, we cannot think the fee owners, although they may have tendered payment to the immediate titleholder, may rest indefinitely thereon, and invoke it against a subsequent grantee having no knowledge thereof. Yust denied having received a tender from plaintiffs after she became the tax-title holder. The evidence in relation thereto was uncertain, and the trial court found that it "was not sufficient."

■ Another claim by plaintiffs in error has to do with the status of an earlier action instituted by defendant Yust and several others, as plaintiffs, against plaintiffs here, and some one hundred others as defendants, involving a large number of tracts of land, including the one here involved. That action was begun May 14, 1940. In June 1940, plaintiffs here filed a motion therein seeking to require plaintiffs in that action separately to state their "four causes of action and to make them more specific." That motion never was passed upon. In May 1941, plaintiffs there, including defendant Yust here, caused decree to be entered against all defendants there save and except plaintiffs here, and gave the action no further attention, that is to say, abandoned it. In May 1945, plaintiffs here, defendants there, ignoring the preceding action, initiated this action against defendant Yust, to settle title to the property involved. Yust answered in the 1945 action, setting up her tax title, by that time fully ripened, as was adjudged below, and on the merits of which, as appears earlier in this opinion, affirmance is indicated. Plaintiffs here, however, harking back to the earlier action, sought in the new action, which they had instituted, and which was at issue, to dismiss it and to be permitted to have a belated answer and cross complaint interposed in the old action heard and determined there, rather than on their own complaint and defendant Yust's answer in the action brought

by them in May 1945. The trial court resolved against them. We think that by the action of the parties to the old action, it was abandoned by the plaintiffs there when they took the decree in 1941, and by defendants (plaintiffs here) when they filed the present action. Plaintiffs cite *Clark v. Duncanson*, 79 Okla. 180, 192 Pac. 806, in support of their view. We do not think that case is in point. There was nothing to indicate abandonment of an action there, as here; no second action begun in which the title to the property involved was at issue on complaint and answer, as here. There, defendant filed an "answer and cross-petition," which the Oklahoma court held constituted a "counterclaim within the meaning of section 4746 Rev. Laws 1910," etc., pertaining to statutes of limitations, while here, in the action plaintiffs would revive they only filed a motion. In all respects, as our study convinces, the Oklahoma case is quite unlike the one here. All that occurred there took place in a single action.

In all particulars, as we are persuaded, the trial court resolved in the light of what we believe to be the law of the case. Let the judgment be affirmed.

MR. CHIEF JUSTICE BURKE and MR. JUSTICE ALTER concur.